OPINION OF THE COURT
Edward J. Greenfield, J.
Plaintiff Apple Corps Limited which is the representative of the world famous singing group, the Beatles, sues for a preliminary injunction to restrain the defendants from manufacturing and distributing the record album and tape of their “Christmas Messages.”
Defendants assert that this court lacks jurisdiction, and deny that plaintiff has any rights to the recording. They claim that the rights to the recording were purchased from a former employee of the Beatles’ manager, who claims that he was given the recording by one of the Beatles as a gift. The album which they are distributing is entitled, “John, Paul, George and Ringo.”
Plaintiff Apple Corps Limited is a British company owned equally by the three surviving Beatles, with John Lennon’s share having passed to his widow. It claims to have had the right to exploit all performances of the Beatles as a group. By contract, it conferred upon EMI Records, Ltd., the exclusive rights to the musical efforts and talents of the Beatles and in turn Capitol Records was granted an exclusive license to manufacture and distribute all Beatles’ records in the United States and Canada. EMI Records and Capitol Records, whose rights are clearly affected, have been granted leave to intervene in this action.
The Christmas Messages involved were recorded by the Beatles during the years 1963 through 1969 and were distributed each Christmas, free of charge, to members of the Beatles’ Fan Clubs on flexible discs. In 1970, the messages were collected and reproduced on a long-playing record entitled “The Beatles’ Christmas Album” and that record was then distributed to members of the Beatles’ Fan Clubs. The records clearly indicate thereon that all rights with respect to the recording were reserved.
*353 Plaintiff’s claim for injunctive relief is premised not on copyright (there was no Federal copyright for recordings prior to 1972, US Code, tit 17, § 301, subd [c]), but on claims of unfair competition and violation of their rights of publicity. Defendants, in addition to their jurisdictional objection, contend that these Beatles’ songs were in the public domain, or in any event were duly transferred to them by one Pete Bennett who claims that he was given the rights to these recordings as a gift by the late John Lennon. The contention that this court lacks in personam jurisdiction over the defendants is without substance. Defendants Smulian and R/S Distribution Inc. were personally served within this State. The other defendants are subject to the jurisdiction of this court under the long-arm provisions of CPLR 302. Since it is claimed that defendants have committed and are about to commit further tortious acts within the State, that the defendants’ album, the cover and the label were done within the State and that a large part of the promotion and marketing efforts of the defendant would be within the State, there is no question but that this court has jurisdiction. Further, defendant U.M. Leasing Corp. is a New York corporation which authorized the use of the master recording by defendant Adirondack.
Defendants’ claim of right to use, promote and sell these Christmas Messages is based, in part, on the claim of one Peter Bennett, who used to work for the Beatles’ manager, Allen Klein, that in 1972 or 1973, John Lennon made an oral gift to him of all right, title and interest in these performances. This claim is not substantiated by any documents of any kind. Any oral testimony by Bennett “concerning a personal transaction or communication between the witness and [a] deceased person” cannot be heard under the New York Dead Man’s Statute. (CPLR 4519.) That statute exists expressly so that persons cannot assert an adverse claim to title based upon alleged oral dealings with a person no longer available to refute it. Significantly, although Bennett claims to have had these master recordings as a gift from 1972 or 1973 on, he made no attempt to use or exploit them during the height of the Beatles’ popularity. It was not until after John Lennon died in December, 1980 that he first claimed the oral gift *354 from Lennon. The only one of the four Beatles with whom Bennett allegedly had any conversations pertaining to these recordings is the one who is now deceased, John Lennon. Even assuming, arguendo, that Lennon had done more than merely give Bennett a record, but intended to confer upon him not only the master tapes but the right to reproduce and market them, by what right could he do so to the exclusion of the interests of the other three Beatles and the rights of Apple Corps Ltd. and the intervenors, which had the exclusive rights by contract? This tenuous claim to rightful ownership will not stand up to even casual scrutiny.
The attempt by the defendants to promote these 14- to 20-year-old recordings appears to be an act of blatant piracy. Bennett attempted to avoid a head-on conflict by advising U.M. Leasing Corp. that they should not use the name “Beatles” in connection with their proposed release of the messages, and instead, the album was titled “John, Paul, George and Ringo.” This does not insulate the defendants from the charge that they are unfairly trading on the name of the Beatles. Four persons named “John, Paul, George and Ringo” will not be taken by the public as a reference to the Moskowitz brothers, to the Pope and two other people, or to anyone else except the members of the best known singing group in the world. These four names taken together have acquired a secondary meaning, and the Beatles are entitled to protect their name from exploitation. (See Five Platters v Purdie, 419 F Supp 372, 381; Matter of Presley v Russen, 513 F Supp 1339, 1354.)
It is clear that the defendants are not only misappropriating the names of the Beatles, a valuable property in its own right, but they are intending to sell recorded performances of the Beatles for their own gain. “[W]here the apparent purpose is to reap where one has not sown, or to gather where one has not planted, or to build upon, or profit from, the name, reputation, good will or work of another” such actions will be enjoined as unfair competition. (Harvey Mach. Co. v Harvey Aluminum Corp., 9 Misc 2d 1078, 1080.) Record piracy is a well-recognized form of unfair competition. (See Metropolitan Opera Assn. v Wagner-Nichols Recorder Corp., 199 Misc 786, affd 279 App *355 Div 632.) The court there stated (p 796) that the right of the plaintiff in its recordings “are to be and will be protected from any form of unfair invasion or infringement and from any form of commercial immorality, and a court of equity will penetrate and restrain every guise resorted to by the wrong-doer * * * That defendants’ piratical conduct and practices have injured and will continue to injure plaintiffs admits of no serious challenge, and possible money damages furnishes no adequate remedy.” (See, also, Capitol Records v Greatest Records, 43 Misc 2d 878, a case in this court also involving the Beatles; Gieseking v Urania Records, 17 Misc 2d 1034; Radio Corp. v Premier Albums, 19 AD2d 62.) In the Gieseking case (supra, p 1035) the court observed that “[a] performer has a property right in his performance that it shall not be used for a purpose not intended, and particularly in a manner which does not fairly represent his service.” In this case, it appears clear that for a period of 20 years the Beatles never intended these Christmas Messages to be distributed to the public-at-large and had the right to prevent recordings of inferior quality which were made as a lark for the delectation of their fans from being commercially distributed.
The defendants contend that somehow the dissemination of these Christmas Messages constituted an abandonment of proprietary claims and a release of the work in the public domain. While publication and distribution of a work without a reservation of rights constitutes an implication that the owner is abandoning his rights and retains no interest (City of Binghamton v Gartell, 275 App Div 457), noncommercial distribution of these recordings of Christmas Messages to members of the Beatles’ Fan Clubs cannot in any way be considered an abandonment of plaintiff’s proprietary rights. Even in that limited distribution, all rights to manufacture and distribute were expressly reserved. The passage of the Sound Recording Copyright Law in 1972 did not preempt State courts from enforcing claims for unfair competition, common-law copyright, or violations of the Lanham Act. (US Code, tit 15, § 1125, subd [a].) While the distribution of copyrightable works to the general public without compliance with statutory formalities may result in the loss of proprietary rights, that is *356 not the case with respect to works which could not be copyrighted. The Beatles, by distributing the Christmas Messages to their fan clubs, abandoned no rights. Whatever rights they had exclusive of copyright were expressly reserved on both the cover and the label of the Beatles’ Christmas album.
The other contentions of the defendants as to estoppel, and failure to join the necessary parties, are without merit and do not require extended discussion.
Similarly, the claim by plaintiff as to a violation of the right to publicity need not be dealt with, as the right to an injunction is established. All the cases cited in connection with this alleged right of publicity are in the Federal courts or courts of other States. There are no New York cases of which this court is aware recognizing such an independent right, and several intertwined with other problems which appear to deny its existence. For this case it suffices that it has been demonstrated to the court’s satisfaction that the names and performances of the Beatles are intended to be used by the defendants in an unauthorized and illegal fashion, and accordingly, plaintiff’s motion for injunction is granted.