**APPLE CORPS LIMITED, Plaintiff,**

v.

**A.D.P.R., INC., Mark Davis Benson, Greg Phillip George, Gary Roy Grimes, Thomas Allen Work, Defendants.**

**No. 3:91–0675.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Nov. 16, 1993.

Jay Scott Bowen, Nancy–Ann Elizabeth Min, John R. Jacobson, Bass, Berry & Sims, Nashville, TN, for plaintiff.

Robert Leslie Callis, Mt. Juliet, TN, Malcolm L. Mimms, Jr., Wyatt, Tarrant & Combs, Nashville, TN, Henry M. Lloyd, Washington, DC, William T. Whitaker, William T. Whitaker, Akron, OH, for defendants.

## MEMORANDUM

ECHOLS, District Judge.

Presently pending before the Court is the Plaintiff's Motion for Partial Summary Judgment under the Lanham Act and the Tennessee Personal Rights Protection Act. The Defendants have filed an objection to this Motion. For the reasons outlined herein, the Plaintiff's Motion for Partial Summary Judgment under Tennessee's Personal Rights Protection Act is hereby GRANTED, and Plaintiff's Motion for Partial Summary Judgment under § 43(a) of the Lanham Act is DENIED.

The following facts are not disputed. Plaintiff is the owner of the rights of publicity, trade names and trademarks at common law of The Beatles music group and of its former members individually. Plaintiff is solely authorized to exploit the unique elements and features of The Beatles. (Aspinall affidavit, para. 7.) Defendants are members of a performing group known as "1964 as the Beatles," which performs throughout the United States and Canada. (Defendants' Answer, para. 7.) The group seeks to recre-

ate a Beatles concert from the years 1964 to 1966. (Benson Affidavit, para. 3; Defendants' Answer, para 7.) The group's objective is to look and sound as much like The Beatles as possible. (Benson deposition, p. 102.) Toward that end, the group imitates the overall appearances, hairstyles, dress, mannerisms, voices, equipment and musical performances of The Beatles. (Aspinall affidavit, para. 4; Grimes deposition, pp. 62–64.) On stage, the group's members refer to each other as "John," "Paul," "George" and "Ringo," adopt Liverpool accents, and perform only songs which The Beatles recorded or performed. (Benson deposition, pp. 64–65.) In addition, Defendants have placed The Beatles' logo on the group's bass drum, with "1964 as" written above the logo in small print. (Faherty affidavit, para. 2.)

It is undisputed that Defendants engage in these performances as a commercial endeavor. That is, the group employs agents, who negotiate contracts with venue owners, and pursuant to these contracts, the group receives money in exchange for its performances. (Benson deposition, pp. 40–41.) In advertising these performances, Defendants publish posters and flyers in which they are photographed to look like The Beatles on the cover of the album, "A Hard Day's Night." (Grimes deposition, pp. 122–25.) Although they are not now, Defendants did, for approximately two years, market t-shirts, window decals, buttons, pictures and posters, featuring the group name "1964 as the Beatles." (Grimes deposition, p. 114–16; Work deposition, pp. 61–62.) The group derived income from this source as well. (Work deposition, pp. 61–62.)

Defendants distribute promotional and advertising materials which, Plaintiff contends, imply that the performances are sponsored, endorsed, approved or otherwise authorized by Apple Corps. Defendants disagree that their advertising and promotional materials create confusion as to sponsorship of their performances. However, it is undisputed that Defendants have not received any sort of approval from, or endorsement by, Apple Corps.

Plaintiff contends that Defendants' performances, and the advertisement and promotion thereof, violate § 43(a) of the Lanham Act (15 U.S.C. § 1125(a) (1988)) and Tennessee's Personal Rights Protection Act (Tenn. Code Ann. § 47–25–1105(a) (1988 & Supp. 1993)). Therefore, Plaintiff seeks a permanent injunction "which would prohibit the Defendants from performing, producing, promoting, publicizing, advertising or booking performances as a Beatles sound-alike, look-alike band, and from incorporating the name 'The Beatles' or the distinctive combination of the names 'John,' 'Paul,' 'George,' and 'Ringo' in any performances or on any products or publications for purposes of trade or advertising." (Plaintiff's Memorandum in Support of Motion, p. 18.)

In ruling on a motion for summary judgment, this Court must construe the evidence produced in the light most favorable to the non-moving party, drawing all justifiable inferences in his or her favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). A party may obtain summary judgment if the evidentiary material on file shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The moving party bears the burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley,* 803 F.2d 236, 239 n. 4 (6th Cir.1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact which is disputed. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. If so, summary judgment dismissal is inappropriate.

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as

to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a) (1988). Simply put, the Act prohibits one from using in advertising names and symbols which are so similar to those of another entity that they will likely confuse or mislead the public into believing that the other entity endorses or sponsors the product or service. It prohibits false descriptions of products or of their origins.

It is undisputed that Defendants are using in advertising names which are identical, and symbols which are similar, to those of "The Beatles." However, the only proof which Plaintiff has submitted on the issue of public confusion is an affidavit of the Plaintiff's General Manager, which makes the wholesale allegation that there is, or is likely to be, public confusion. The only proof from the Defendants on that issue is the affidavit of Mark Benson, a member of the group, which states that the group has never intended to mislead the public into believing that the group is sponsored or approved by Apple Corps or the Beatles.

■■■ The issue of the likelihood of public confusion is key in making out a claim under the Lanham Act. A court should grant a motion for summary judgment on a Lanham Act claim only where it determines that "no reasonable jury could fail to find a likelihood of confusion." *Allen v. Nat'l Video, Inc.*, 610 F.Supp. 612, 629 (S.D.N.Y.1985). The parties have not submitted credible, or even relevant, proof on that issue. The parties' assessment of whether they deem the use of the names and symbols confusing is not relevant or probative on the issue of whether the public is likely to be confused. The latter is the issue before this Court. The Court finds that there is a genuine dispute regarding this

material fact, and the question must be decided by a jury. Accordingly, Plaintiff's Motion for Summary Judgment seeking a permanent injunction under the Lanham Act is hereby DENIED.

Tennessee's Personal Rights Protection Act provides that

"[a]ny person who knowingly uses or infringes upon the use of another individual's name, photograph or likeness in any medium, in any manner directed to any person other than such individual, as an item of commerce for purposes of advertising products, merchandise, goods, or services, or for purposes of fund raising, solicitation of donations, purchases of products, merchandise, goods, or services, without such individual's prior consent … shall be liable to a civil action."

Tenn.Code Ann. § 47–25–1105(a) (1988 & Supp.1993). Plaintiff contends that Defendants' use of the name "The Beatles" and of the combination of the names "John," "Paul," "George" and "Ringo" in their publicity materials and their performances violates this statute. In addition, Plaintiff claims that the use of Defendants' promotional poster modeled after the album cover of "A Hard Day's Night" is also a violation.

■■■ Defendants claim that the First Amendment to the Constitution protects their use of these names in the title and context of an artistic performance. Generally, it is accurate to say that entertainment enjoys First Amendment protection. *Zacchini v. Scripps–Howard Broadcasting Co.*, 433 U.S. 562, 578, 97 S.Ct. 2849, 2859, 53 L.Ed.2d 965 (1977). However, First Amendment rights are not absolute. *Dennis v. United States*, 341 U.S. 494, 503, 71 S.Ct. 857, 864, 95 L.Ed. 1137 (1951). In certain circumstances, the interests protected by the First Amendment will inevitably conflict with another individual's right of publicity. *See Estate of Presley v. Russen*, 513 F.Supp. 1339, 1359 (D.N.J.1981).

■■■ In the *Presley* case, the estate of the late Elvis Presley sued an Elvis impersonator[1] under New Jersey's common law

---

1. The court in that case found that the performance was "a live theatrical presentation or

right of publicity.[2] In that case, the court was faced with determining the relation between the estate's right of publicity and the performer's First Amendment right of free speech and expression. *Id.* at 1356. The court determined that the "scope of the right of publicity should be measured or balanced against societal interests in free expression." *Id.* *See Zacchini v. Scripps–Howard Broadcasting Co.,* 433 U.S. 562, 569–79, 97 S.Ct. 2849, 2854–59, 53 L.Ed.2d 965 (1977). It reasoned that

the purpose of the portrayal in question must be examined to determine if it predominantly serves a social function valued by the protection of free speech. If the portrayal mainly serves the purpose of contributing information, which is not false or defamatory, to the public debate of political or social issues or of providing the free expression of creative talent which contributes to society's cultural enrichment, then the portrayal generally will be [entitled to First Amendment protection and] immune from liability. If, however, the portrayal functions primarily as a means of commercial exploitation, then such immunity [under the First Amendment] will not be granted.

*Estate of Presley,* 513 F.Supp. at 1356.

The court found that

although 'THE BIG EL SHOW' contains an informational and entertainment element, the show serves primarily to commercially exploit the likeness of Elvis Presley without contributing anything of substantial value to society.... [E]ntertainment that is merely a copy or imitation, even if skillfully and accurately carried out, does not really have its own creative component and does not have a signifi-

cant value as pure entertainment. As one authority has emphasized:

The public interest in entertainment will support the sporadic, occasional and good-faith imitation of a famous person to achieve humor, to effect criticism or to season a particular episode, but it does not give a privilege to appropriate another's valuable attributes on a continuing basis as one's own without the consent of the other.

*Id.* at 1359–60 (quoting Netterville, "Copyright and Tort Aspects of Parody, Mimicry and Humorous Commentary," 35 S.Cal. L.Rev. 225, 254 (1962)).

The facts of the *Presley* case are directly on point with the facts of this case. This Court is persuaded by the reasoning of the *Presley* court, and likewise finds that Defendants are not entitled to First Amendment protection for their use of the names and likenesses of The Beatles.

Defendants claim that their use of the combination of the names "John," "Paul," "George," and "Ringo" cannot violate the statute because the names are used only in their performances, and not in advertisements or promotions. They contend that the use of personal names in a performance does not fall within the proscription of Tennessee's Personal Rights Protection Act. This Court agrees. The statute does not prohibit *all* unauthorized uses of another's name or likeness. Rather, the statute is narrowly drawn, so that it only prohibits the unauthorized use of another's name or likeness "*as an item of commerce for purposes of advertising products, merchandise, goods, or services, or for purposes of ... solicitation of ... purchases of products, merchandise, goods, or services.*" Tenn.Code Ann. § 47–25–1105(a) (1988 &

---

concert designed to imitate a performance of the late Elvis Presley. The show stars an individual who closely resembles Presley and who imitates the appearance, dress, and characteristic performing style of Elvis Presley. The defendant has made no showing, nor attempted to show, that the production is intended to or acts as a parody, burlesque, satire, or criticism of Elvis Presley.... [His] show is billed as 'A TRIBUTE TO ELVIS PRESLEY.' " *Estate of Presley,* 513 F.Supp. at 1359.

2. New Jersey's common law right of publicity prohibits the unauthorized, commercial appropriation of an individual's name or likeness. *Estate of Presley,* 513 F.Supp. at 1354. New Jersey's common law right is much broader than that articulated in § 47–25–1105. New Jersey's version prohibits *any* unauthorized commercial use of another's name or likeness. Conversely, Tennessee's legislature, by enacting § 47–25–1105, has narrowed the common law prohibition, proscribing only the unauthorized use of another's name or likeness in advertising.

Supp.1993). Indeed, its legislative history indicates that the statute was intended to "create[ ] an inheritable property right for those people who use their name[s] or likeness[es] in a commercial manner, such as an entertainer or sports figure—*someone who uses [his or her] name for endorsement purposes.*"[3]

However, Plaintiff submits proof that the Defendants also have used the combination of the individual names in advertising. (Aspinall Affidavit, para. 14.) Tennessee's statute is clearly directed at preventing the use of another's name or likeness, without consent, for advertising purposes. The combination of the four names "John," "Paul," "George," and "Ringo" has acquired a secondary meaning and is another term for the group The Beatles. *See Apple Corps Ltd. v. Adirondack Group,* 124 Misc.2d 351, 476 N.Y.S.2d 716, 719 (N.Y.Sup.Ct.1983). Where the distinctive combination of these four names is used in the Defendants' performances, rather than in their advertising, the use of these names is not violative of Tennessee's statute. However, the use of the combination of these individual names in advertising or promotional materials does violate § 47–25–1105(a).

Defendants also argue that Tenn. Code Ann. § 47–25–1105(a) cannot apply to the use of the group name "The Beatles" because that statute only protects "individuals." To read Tennessee's statute in that way would result in a perversion of its intent. Certainly, the stage name of a group of individuals is entitled to the same protection as the name of one of the individuals which compose that group. Therefore, this Court finds that Defendants' use of the name "The Beatles" in Defendants' advertising and promotional materials violates Tenn.Code Ann. § 47–25–1105(a).

The Court now turns to the use of the advertising posters which are modeled after "A Hard Days' Night" album cover. The posters contain photographs of the faces of Defendants, photographed from the middle of their noses up. In these photographs, the Defendants' hair is styled as the Beatles wore their hair in the mid–1960's. By their own admission, the Defendants are attempting to look as much like the members of the Beatles as possible. (Benson deposition, p. 102; Grimes deposition, pp. 62–64.) The four photographs are then arranged to form a block. This format is identical to that used on the American version of the cover of the record "A Hard Day's Night." Indeed, Defendants admit that they modeled their poster after that album cover. (Grimes deposition, pp. 122–125.)

Apparently, there are no Tennessee cases on this issue. However, the New York case, *Onassis v. Christian Dior–New York, Inc.,* 122 Misc.2d 603, 472 N.Y.S.2d 254 (N.Y.Sup. Ct.1984), *aff'd,* 110 A.D.2d 1095, 488 N.Y.S.2d 943 (N.Y.App.Div.1985), interpreting a New York statute which is very similar to § 47–25–1105,[4] is instructive. In that case, the defendant used a Jacqueline Onassis lookalike in a clothing advertisement. The defendant claimed it had not violated the New York statute because the photograph was not of Ms. Onassis herself, but was of someone who looked very much like her. *Onassis,* 122 Misc.2d at 607, 472 N.Y.S.2d at 258. That is the same argument made by Defendants in this case.

The New York Supreme Court held that Christian Dior had violated New York's privacy statute, which was "intended to protect the essence of the person, his or her identity or persona from being unwillingly or unknowingly misappropriated for the profit of another." *Onassis,* 122 Misc.2d at 610, 472 N.Y.S.2d at 260. The court further stated:

---

**3.** This explanatory statement was made on April 5, 1984 by Senator Kyle, the sponsor of Senate Bill 1566, which was enacted as Tenn.Code Ann. § 47–25–1105. Tennessee does not publish the legislative history of its laws. The only record of legislative sessions is on audio tape, which can be obtained at the Tennessee State Archives in Nashville.

**4.** Section 50 of the New York Civil Rights Law provides: "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person ... is guilty of a misdemeanor." N.Y.Civil Rights Law § 50 (Consol.1993). Section 51 of that same statute provides civil remedies for any such violation.

We are dealing here with actuality and appearance, where illusion often heightens reality and all is not quite what it seems. Is the illusionist to be free to step aside, having reaped the benefits of his creation, and permitted to disclaim the very impression he sought to create? If we were to permit it, we would be sanctioning an obvious loophole to evade the statute.... The essential purpose of the statute must be carried out by giving it a common sense reading which bars easy evasion. If we truly value the right of privacy in a world of exploitation, where every mark of distinctiveness becomes grist for the mills of publicity, then we must give it more than lip service and grudging recognition.

*Onassis,* 122 Misc.2d at 612, 472 N.Y.S.2d at 261.

This Court is persuaded by the logic of the court in the *Onassis* case. It is important to note that § 47–25–1105(a) is more broadly worded than the New York statute; § 47–25–1105 prohibits the use of another's *likeness* in an advertising context, not just the use of portraits or photographs of another.

It is undisputed that the goal of Defendants' group is to look and sound as much like The Beatles as possible. In fact, Defendants admit that in the poster photographs, they were attempting to show their close resemblance to The Beatles in order to persuade people to attend their shows. In other words, Defendants were using the likenesses of the Beatles to promote their shows. This is exactly what Tennessee's statute, like the New York statute, is designed to prevent. This Court concludes that the Defendants' use of these photographs violates § 47–25–1105(a).

Having found that Defendants' actions violate Tenn.Code Ann. § 47–25–1105(a), this Court must next consider whether injunctive relief is appropriate. "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506–07, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959). This Court must consider those factors in determining whether to grant the requested injunctive relief.

In determining the propriety of issuing an injunction, courts have held that a plaintiff will suffer irreparable injury when plaintiff is unlikely to be made whole by an award of damages or other relief at the end of trial. *Vogel v. American Soc'y of Appraisers,* 744 F.2d 598, 599 (7th Cir.1984). Plaintiff is not required to show that the injury is beyond the possibility of repair or compensation of damages. It is sufficient that plaintiff show that the injury, because of its constant and frequent recurrence, cannot be addressed on a fair or reasonable basis in a court of law. *Donovan v. Pennsylvania Co.,* 199 U.S. 279, 305, 26 S.Ct. 91, 99, 50 L.Ed. 192 (1905).

Plaintiff contends that it cannot be made whole by an award of damages, and this Court agrees. Plaintiff alone owns the right to control the use of the names and likenesses of The Beatles. Defendants' unauthorized use thereof infringes on Plaintiff's rightful use and detracts from the value of the marks and names which Plaintiff alone has the right to commercially exploit. Furthermore, the recurrent nature of Defendants' misappropriations indicates that legal remedies alone would be inadequate.

Defendants have misappropriated the names and likenesses of The Beatles, using them for Defendants' own commercial gain. It is desirable that the law protect an individual's right to control the commercial use of his or her name or likeness. Clearly, enjoining the Defendants' activities would serve the public interest by protecting this right.

For the foregoing reasons, this Court hereby DENIES Plaintiff's Motion for Partial Summary Judgment under the Lanham Act and GRANTS Plaintiff's Motion for Partial Summary Judgment under Tennessee's Personal Rights Protection Act. The Defendants are permanently enjoined from: (1) using the distinctive combination of the names "John," "Paul," "George," and "Ringo" in advertising or promoting the Defendants' performances or products; (2) using any likeness of the group The Beatles, or the individual members thereof, in advertising or promoting the Defendants' performances or

products; and (3) using the name "The Beatles" in advertising or promoting the Defendants' performances or products. The third prohibition necessarily includes a prohibition on using the name "The Beatles" in the name of Defendants' performing group.

### ORDER

Presently pending before this Court is the Plaintiff's Motion for Partial Summary Judgment to which the Defendants have objected. For the reasons more fully outlined in the accompanying Memorandum Opinion contemporaneously entered herewith, Plaintiff's Motion for Partial Summary Judgment under § 43(a) of the Lanham Act (15 U.S.C. § 1125(a) (1988)) is hereby DENIED.

However, Plaintiff's Motion for Partial Summary Judgment under Tennessee's Personal Rights Protection Act, Tenn.Code Ann. § 47–25–1105(a) (1988 & Supp.1993), is hereby GRANTED. Accordingly, the Defendants are hereby permanently enjoined from: (1) using the distinctive combination of the names "John," "Paul," "George," and "Ringo" in advertisements or promotions of the Defendants' performances or products; (2) using any likeness of the group The Beatles, or the individual members thereof, in advertisements or promotions of the Defendants' performances or products; and (3) using the name "The Beatles" in advertisements or promotions of the Defendants' performances or products. This third prohibition necessarily includes a prohibition on using the name "The Beatles" in the name of Defendants' performing group.

It is so ordered.