OPINION OF THE COURT
Frank Vaccaro, J.
Upon the court’s own motion, the decision/order in this matter, dated December 9, 1996, is hereby recalled and the following is substituted in its place.
Plaintiffs seek an order preliminarily enjoining defendant from making allegedly false statements about their musical enterprise that they contend are destructive of their business. Defendant cross-moves for an order, pursuant to the General Business Law, enjoining the plaintiffs from billing themselves as "The Fireflies” in their musical performances, dismissing the plaintiffs’ complaint, and seeking sanctions.
In 1959, defendant Paul Giacalone, using his stage name of Paul DeMaya, together with three other individuals, created a musical group named the "Fireflies”.[1] In their four-year tenure, they achieved a measure of money and fame for their "doo-wop” sound.[2] The two major "hit” records of the Fireflies were "You Were Mine” and "I Can’t Say Goodbye”, both composed by defendant Giacalone.
In 1962-1963, defendant Giacalone’s three fellow band members left the Fireflies. Acting on his own behalf and on behalf of the Fireflies, from 1962 to date, Giacalone receives all *647 the royalties for the record sales and radio air play of recordings of the Fireflies.
Thirty years later, in 1992, an individual named John Muro asked Giacalone to give an audition to three musicians, the plaintiffs herein: Lawrence Gallina, Charles Marrone, and Frank Pionegro, in an effort to reconstitute the Fireflies. Giacalone agreed. The defendant and the plaintiffs gave only one performance, and Giacalone decided that he no longer wanted the three plaintiff musicians to perform with him.
Prior to the breakup of their short-lived association, in 1993, plaintiffs and defendant applied to register the service mark of the Fireflies. The United States Department of Commerce Patent and Trademark Office denied the request, finding that an individual already held a registered mark for the name "The Firefly” in the grammatically singular form.
After Giacalone’s decision to terminate his association with them, the plaintiffs, nevertheless, continued to seek singing engagements and performed, billing themselves as the Fireflies. In numerous advertisements, announcements, posters, and appearances, the plaintiffs claimed that they would perform "their smash hits of 'You Were Mine’ and 'I Can’t Say Goodbye’ ” (emphasis added).
The plaintiffs also, at one point, allegedly entered into and allegedly renewed a license agreement with the registered owner of the mark of "The Firefly”, allegedly claimed to be authorized as a mark for use in entertainment services. Plaintiffs, however, have failed to attach to the papers on the instant motions a copy of the alleged licensing agreement that would disclose its terms and duration, or a copy of the registration certificate for the mark "The Firefly” that would reveal its intended use and purpose. The plaintiffs, furthermore, in a published interview with the Daily News (Apr. 22, 1994), a widely read daily newspaper in New York City, claimed that defendant withdrew from the Fireflies and that plaintiffs had acquired a trademark for the name.
In response to plaintiffs’ conduct, Giacalone has repeatedly communicated with various journals, concert and event sponsors, and radio stations that he, not the plaintiffs, represents the Fireflies, and defendant further warned that he will initiate a civil action against anyone who permits the plaintiffs to bill or call themselves or perform under the name "The Fireflies”.
The plaintiffs, in their motion, seek to enjoin Giacalone’s actions, arguing that his repeated threats to promoters, newspa *648 pers, and disc jockeys are defamatory and are resulting in substantial loss of income. Giacalone, in his cross motion, seeks to enjoin the plaintiffs from using the name "The Fireflies”.
In order to obtain a preliminary injunction, a party must demonstrate a "probability of success [on the merits], danger of irreparable injury in the absence of an injunction, and a balance of the equities in [its] favor” (Aetna Ins. Co. v Capasso, 75 NY2d 860, 862; Grant Co. v Srogi, 52 NY2d 496, 517; Graziano v Turiano, 231 AD2d 674; Board of Directors v E.H. Assocs., 230 AD2d 816; Yeshiva Univ. v Greenberg, 228 AD2d 494; Patti v Cohen, 227 AD2d 602).
The discussion of plaintiffs’ motion regarding the legality of defendant calling promoters to say that he, and not the plaintiffs, can use the name "The Fireflies” and threatening legal action if the plaintiffs perform under that name involves the same issue as that contained in Giacalone’s cross motion seeking to enjoin plaintiffs from using the name: which of the parties can perform under that name. The court will therefore first discuss defendant’s cross motion.[3]
The law of trade and service mark protection advances two goals. First, it protects consumers from false and misleading representations concerning the source, quality, and identity of a product. Second, it protects the rights of the owner of the trade or service mark to have his or her product or service identified by a distinct name or label (Birthright v Birthright, Inc., 827 F Supp 1114, 1133 [D NJ 1993]; Estate of Presley v Russen, 513 F Supp 1339, 1362 [D NJ 1981]).
Under appropriate circumstances, both Federal and New York statutory law can protect even an unregistered mark. The Federal Lanham Act (15 USC § 1125 [a]) proscribes "any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which” "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her * * * services * * * by another person” (15 USC § 1125 [a] [1] [A]). The section further provides for injunctive relief and, in certain cases, for other relief (15 USC § 1125 [c] [2]) and is the only provision of the Lanham Act that is avail *649 able to protect an unregistered mark (Centaur Communications v A/S/M Communications, 830 F2d 1217, 1220 [2d Cir 1987]; Simon & Schuster v Dove Audio, 936 F Supp 156, 160 [SD NY 1996]).
Under our State’s statutes, General Business Law § 368-d, also known as the antidilution statute, states that the "[likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement or of a mark registered or not registered”. The term "dilution” in section 368-d is based upon the idea that a name or mark can lose its ability, through an unauthorized use, of unmistakably distinguishing one source (Hormel Foods Corp. v Jim Henson Prods., 73 F3d 497, 506 [2d Cir 1996]).
Section 133 of the General Business Law, in addition, permits a State court possessing jurisdiction to issue an injunction to prevent an entity from adopting a name for advertising and trade purposes that would "deceive or mislead the public * * * as to the connection of such [entity] with any other [entity]”, even without requiring proof that any person has in fact been misled or deceived.[4]
For nearly 100 years, beginning with Messer v "The Fadettes” (168 Mass 140, 46 NE 407 [1897]), courts in this country have protected the right of a musical group to its name from preda *650 tory encroachment by rival entertainers (see, Annotation, Trademark Protection Under Lanham Act [15 USCS §§ 1501 et seq.] of Name of Musical Group, 115 ALR Fed 171; see, e.g., Cash v Brooks, 906 F Supp 450 [ED Tenn 1995]; Apple Corps v A.D.P.R., Inc., 843 F Supp 342 [MD Tenn 1993]; Baker v Parris, 777 F Supp 299 [SD NY 1991]; Grondin v Rossington, 690 F Supp 200 [SD NY 1988]; Rick v Buchansky, 609 F Supp 1522, supra).
Applying the foregoing legal principles to the present case, the court finds that the plaintiffs have unfairly capitalized upon the work of defendant Giacalone and have essentially attempted to pirate the name of the Fireflies. Giacalone was a founding member of the group in 1959. He wrote the Fireflies’ two most famous songs, which plaintiffs’ own publicity describes as "Smash Hits”. From 1962 to the present, Giacalone has been recognized by the record industry as the sole person qualified to represent the Fireflies by virtue of sending royalties to Giacalone for "The Fireflies”. During that period, Giacalone continuously accepted payments for the Fireflies.
In 1992, defendant Giacalone sought to reconstitute the group for the purpose of performing. He, with the help of his son, has attempted to re-form the "Fireflies”, since his breakup and dissatisfaction with the plaintiffs, but has been prevented from doing so because of the plaintiffs’ illegal expropriation of the Fireflies’ name.
The court has reviewed the extensive exhibits attached to both the motion and cross motion. It is readily apparent that the plaintiffs, who, concededly, did not arrive on the scene until 1992 — 33 years after "The Fireflies” were first formed— and who performed only once with one of its founding members, embarked upon a course of conduct to expropriate the group’s name and to-mislead the public into believing that they are the original "Fireflies”. The court’s review of the exhibits, and of plaintiffs’ publicity efforts, shows that they are deceptive or misleading, attempting to take credit as "The Fireflies” for "their Smash Hits” (emphasis added) of "You Were Mine” and "I Can’t Say Goodbye”.
In Apple Corps v Adirondack Group (124 Misc 2d 351, 354), the court stated: "[T]he defendants are not only misappropriating the names of the Beatles, a valuable property in its own right, but they are intending to sell recorded performances of the Beatles for their own gain. '[W]here the apparent purpose is to reap where one has not sown, or to gather where one has not planted, or to build upon, or [to] profit from, the name, rep *651 utation, good will or work of another’ such actions will be enjoined as unfair competition. (Harvey Mach. Co. v Harvey Aluminum Corp., 9 Misc 2d 1078, 1080.) Record piracy is a well-recognized form of unfair competition.” The above language equally applies to the plaintiffs’ predatory acts in the present case.
The plaintiffs’ argument that defendant abandoned the mark is rejected. The defendant received payments for the "Fireflies”; in 1992, he auditioned the plaintiffs because Giacalone wanted to re-form the group; and defendant, in his continuous threats made to the plaintiffs and concert promoters that he would commence litigation, rather than show an abandonment exhibited the appropriate type of vigorous protests that courts require to negate a claim of acquiescence or abandonment of a mark (see, Board of Trustees v Professional Therapy Servs., 873 F Supp 1280, 1285 ["owner’s actions to protect its marks through the successful use of cease and desist letters and litigation”], 1292, n 7 [WD Ark 1995]).
Even if the court were to accept, arguendo, that the plaintiffs entered into a licensing agreement with a Chicago-based entity for use of the mark "The Firefly” — and no documents have been presented to substantiate the claim — the court cannot agree that a license to use "The Firefly” can be liberally twisted so as to permit the plaintiffs to use the name of a separate entity "The Fireflies”. In none of their numerous advertisements did the plaintiffs confine themselves to the alleged legitimate scope of a license by calling themselves "The Firefly”. "The Firefly” may refer to an entertainment service, but it was not the "doo-wop” group called "The Fireflies” that produced two hit recordings written by defendant. Plaintiffs cannot stretch the name "The Firefly” into mutant variations and thereby trample over the aforementioned Federal and State statutes.[5]
*652 The defendant has satisfied all the criteria for injunctive relief and the showing required by the General Business Law.[6] Accordingly, the branch of defendant’s cross motion to enjoin and restrain the plaintiffs’ use of the name "The Fireflies” and/or any similar name or mark, in trade or business, or from making any representations as to their alleged relationship to "The Fireflies” or its recordings is granted. Consistent with the goal of General Business Law §§ 133 and 368-d, the injunction shall go into effect immediately.
Having resolved that defendant Giacalone is the true owner of the mark "The Fireflies” and that plaintiffs must cease to use that mark, the court now addresses the plaintiffs’ motion to enjoin defendant’s threats of litigation as tortiously interfering with their business and the merits of the plaintiffs’ complaint.
Plaintiffs’ complaint consists of allegations contending that Giacalone made defamatory statements that plaintiffs are not "The Fireflies” and that Giacalone’s threats to concert promoters constitutes tortious interference with the business. The court, as discussed above, finds that defendant’s remarks were not defamatory since he is the owner of the mark. Truth is an absolute defense to a defamation action (Carter v Visconti, — AD2d —, 1996 NY Slip Op 10896 [2d Dept. Nov. 25, 1996]; Smith v United Church Ministry, 212 AD2d 1038, 1039; Zito v American Fedn. of Musicians, 60 AD2d 967, 968; Commonwealth Motor Parts v Bank of Nova Scotia, 44 AD2d 375, 378, affd 37 NY2d 824).
Moreover, threats of litigation are actionable only if they are "wrongful”, namely, if instituted in bad faith or without regard to the merits of the litigation (Tap Publs. v Chinese Yellow Pages [New York], 925 F Supp 212, 222 [SD NY 1996]). Giacalone’s efforts in contacting promoters were done in good faith and consistent with the law that requires activity by the owner of the mark to prevent an inference of abandonment.
Plaintiffs, therefore, have not established a likelihood of success on the merits or a balancing of equities in their favor. Their motion for injunctive relief is thus denied. Since they cannot state a cause of action, their complaint is dismissed (Del Castillo v Bayley Seton Hosp., 232 AD2d 602; Doe v Pace Univ. School of Law, 232 AD2d 368).
*653 In sum, plaintiffs’ motion for preliminary injunctive relief is denied. The defendant’s motion is granted to the extent of issuing the preliminary injunctive relief described above and dismissing the plaintiffs’ complaint. This action is severed as to plaintiffs’ complaint, with the defendant’s counterclaims remaining to be decided. Defendant’s request for sanctions is denied.

. The three other members of the original group were Richard Ziegler, who then used the stage name of Richard Adams, Carl Girsolia, and Lee Reynolds.

. "Doo-wop” is "close, a cappella harmony, most likely performed by four or more male voices” or better explained as "barbershop harmony with a beat” (Rick v Buchansky, 609 F Supp 1522, 1536, 1525, n 1 [SD NY 1985]).

. The parties’ memoranda of law will be treated as part of the record.

. General Business Law § 133 provides: "No person, firm or corporation shall, with intent to deceive or mislead the public, assume, adopt or use as, or as part of, a corporate, assumed or trade name, for advertising purposes or for the purposes of trade, or for any other purpose, any name, designation or style, or any symbol or simulation thereof, or a part of any name, designation or style, or any symbol or simulation thereof, which may deceive or mislead the public as to the identity of such person, firm or corporation or as to the connection of such person, firm or corporation with any other person, firm or corporation; nor shall any person, firm or corporation, with like intent, adopt or use as, or as part of, a corporate, assumed or trade name, for advertising purposes, or for the purposes of trade, or for any other purpose, any address or designation of location in the community which may deceive or mislead the public as to the true address or location of such person, firm or corporation. A violation of this section shall be a misdemeanor. Whenever there shall be an actual or threatened violation of this section, an application may be made to a court or justice having jurisdiction to issue an injunction, upon notice to the defendant of not less than five days, to enjoin and restrain such actual or threatened violation; and if it shall appear to the satisfaction of the court or justice that the defendant is in fact assuming, adopting or using such name, or is about to assume, adopt or use such name, and that the assumption, adoption or use of such name may deceive or mislead the public, an injunction may be issued by said court or justice, enjoining and restraining such actual or threatened violation without requiring proof that any person has in fact been deceived or misled thereby.”

. In a similar vein, the court in Apple Corps v Adirondack Group (124 Misc 2d 351, 354, supra) stated: "Bennett attempted to avoid a head-on conflict by advising U.M. Leasing Corp. that they should not use the name 'Beatles’ in connection with their proposed release of the messages, and instead, the album was titled 'John, Paul, George and Ringo.’ This does not insulate the defendants from the charge that they are unfairly trading on the name of the Beatles. Four persons named 'John, Paul, George and Ringo’ will not be taken by the public as reference to the Moskowitz brothers, to the Pope and two other people, or to anyone else except the members of the best known singing group in the world.”

. Defendant’s right to seek a preliminary injunction is supported by the counterclaims interposed in his answer, including a request for a permanent injunction.