**Rosa PARKS, Plaintiff,**

v.

**LAFACE RECORDS, Arista Records, Inc., BMG Entertainment, Outkast, Kenny B. Edmonds, Antonio M. Reid, and agents, attorneys and John and Jane Does, Defendants.**

No. 99–CV–60256–AA.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 18, 1999.

776

Gregory J. Reed, Gregory J. Reed Assoc., Detroit, MI, for plaintiff.

Blanche B. Cook, Philip B. Phillips, Miller, Canfield, Detroit, MI, Joseph M. Beck, Kilpatrick, Stockton, Atlanta, GA, Conrad L. Mallett, Jr., Miller, Canfield, Detroit, MI, for defendants.

*ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND INJUNCTIVE RELIEF AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

HACKETT, District Judge.

Plaintiff Rosa Parks is a well-known public figure who has been recognized as an international symbol of freedom, humanity, dignity and strength for over 43 years. Plaintiff's notoriety arose from her heroic stance against racial inequality in the South when on December 1, 1955, in Montgomery, Alabama, she refused to give up her seat to a white passenger and move to the back of the bus. This one defiant act precipitated a 381–day bus boycott that ended segregation on public transportation and ultimately sparked the Civil Rights Movement of the 1960's. The above-captioned case presents a conflict between plaintiff's right to protect her celebrated name and the First Amendment right of others to use her name in an expressive

work. Specifically at issue is whether plaintiff can prevent the use of her name as the title of a rap song written, performed, marketed and distributed by defendants. Now before the court are the parties' cross-motions for summary judgment. Oral argument was heard on November 4, 1999. For the following reasons, plaintiff's motion shall be denied, and summary judgment shall be granted regrettably in defendants' favor.

## I. FACTS

The facts relevant to disposition of this matter are few and undisputed. Defendants are entertainers and producers of popular music. Specifically, Kenny Edmonds and Antonio Reid[1] are recording artists and the members of the musical group Outkast, whose services are contractually rendered to LaFace Records. LaFace is a record company engaged in the business of creating, manufacturing and distributing musical sound recordings. LaFace's recordings are manufactured and distributed by a variety of entities under the auspices of Arista Records and BMG Entertainment.

During the week of September 28, 1998, defendants released Outkast's album called *Aquemini*, which included a total of 15 songs. The album's first single release was track number three, a song entitled "Rosa Parks." Plaintiff is not mentioned by name in the lyrics, and the song is not about her or the Civil Rights Movement. However, the chorus includes the words "Ah, ha, hush that fuss. Everybody move to the back of the bus," which are repeated a total of ten times over the course of the work.

The band Outkast, the album *Aquemini*, and the song "Rosa Parks" have all enjoyed a great degree of critical acclaim. *Aquemini* has sold over two million copies (double platinum status), and "Rosa Parks" has enjoyed long-lasting success on the Billboard Charts. In fact, Outkast received their first-ever Grammy nomination for the song. Consequently, defendants have advertised and promoted the *Aquemini* album, the hit single "Rosa Parks" and its Grammy nomination in ways that are customary in the music business, such as in print advertisements, in a music video, and with stickers affixed to the front of each cassette and compact disc jewel case indicating that the album contains "The Hit Singles 'Rosa Parks' And 'Skew It On The Bar–B.' "[2]

No legal relationship of any kind exists between plaintiff and defendants, and defendants did not attempt to secure plaintiff's permission to use her name prior to the release of their *Aquemini* album. Plaintiff, however, opposes defendants' use of her name without compensation. In particular, plaintiff is offended by the use of her name in association with music that contains, according to plaintiff, "profanity, racial slurs, and derogatory language directed at women." To date, defendants have continued to use plaintiff's name on and in connection with the song "Rosa Parks" and the album *Aquemini*. Accordingly, plaintiff filed this lawsuit seeking monetary and injunctive relief. The court now turns to the parties' pending motions.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See F.D.I.C. v. Alexander*, 78 F.3d 1103, 1106 (6th Cir.1996). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfa-

---

1. Although named in the caption of plaintiff's complaint and other pleadings, Edmonds and Reid were never served with process, and, therefore, are not parties to this litigation in their individual capacities.

2. The sticker also states in smaller print: "Parental Advisory. Explicit Content."

vored procedural shortcut. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Kutrom Corp. v. City of Center Line,* 979 F.2d 1171, 1174 (6th Cir.1992).

The standard for determining whether summary judgment is appropriate is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Winningham v. North Am. Resources Corp.,* 42 F.3d 981, 984 (6th Cir. 1994) (citing *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir.1989)). The evidence and all inferences therefrom must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Enertech Elec., Inc. v. Mahoning County Comm'rs,* 85 F.3d 257, 259 (6th Cir.1996); *Wilson v. Stroh Companies, Inc.,* 952 F.2d 942, 945 (6th Cir.1992). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Hartleip v. McNeilab, Inc.,* 83 F.3d 767, 774 (6th Cir.1996).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *see also Adams v. Philip Morris, Inc.,* 67 F.3d 580, 583 (6th Cir.1995). Mere allegations or denials in the non-movant's pleadings will not meet this burden. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Further, the non-moving party cannot rest on its pleadings to avoid summary judgment. It must support its claim with some probative evidence. *Kraft v. United States,* 991 F.2d 292, 296 (6th Cir.), *cert. denied,* 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993).

### III. *DISCUSSION*

#### A. *Right of Publicity Claim (Count I)*

In Count I of the complaint, plaintiff alleges that defendants' use of her name violates her common law right of publicity. The right of publicity protects a celebrity's commercial interest in her identity. "The theory of the right is that a celebrity's identity can be valuable in the *promotion of products,* and the celebrity has an interest that may be protected from the unauthorized commercial exploitation of that identity." *Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831, 835 (6th Cir.1983) (emphasis added). The right of publicity, however, does not authorize a celebrity to prevent the use of her name in an expressive work protected by the First Amendment. 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §§ 28:40–28:41 (4th ed.1999); *see also Hicks v. Casablanca Records,* 464 F.Supp. 426, 430 (S.D.N.Y. 1978) ("[M]ore so than posters, bubble gum cards, or some other such 'merchandise,' books and movies are vehicles through which ideas and opinions are disseminated and, as such, have enjoyed certain constitutional protections, not generally accorded 'merchandise.' "); *Paulsen v. Personality Posters, Inc.,* 59 Misc.2d 444, 450, 299 N.Y.S.2d 501, 508 (1968) ("[E]ven where the 'right of publicity' is recognized, it does not invest a prominent person with the right to exploit financially every public use of name or picture. What is made actionable is the unauthorized use for advertising purposes in connection with the sale of a commodity.").[3] Clearly, "[m]usic,

---

**3.** *Cf. Abdul–Jabbar v. General Motors Corp.,* 85 F.3d 407 (9th Cir.1996) (involved use of basketball player's name in an automobile advertisement); *Winterland Concessions Co. v. Si-* leo, 528 F.Supp. 1201 (N.D.Ill.1981), *aff'd,* 830 F.2d 195 (7th Cir.1987) (involved the use of names of entertainers and musical groups

as a form of expression and communication, is protected under the First Amendment." *Ward v. Rock Against Racism,* 491 U.S. 781, 790, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); *see also Hurley v. Irish–American Gay, Lesbian and Bisexual Group,* 515 U.S. 557, 569, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995) (paintings, music and poetry are "unquestionably shielded" by the First Amendment).

■■■ Similarly, titles of artistic works that use the names of public figures and celebrities, like the works themselves, are entitled to First Amendment protection from right of publicity claims:

> Titles, like the artistic works they identify, are of a hybrid nature, combining artistic expression and commercial promotion. The title of a movie may be both an integral element of the film-maker's expression as well as a significant means of marketing the film to the public. The artistic and commercial elements of titles are inextricably intertwined. Film-makers and authors frequently rely on word-play, ambiguity, irony, and allusion in titling their works. Furthermore, their interest in freedom of artistic expression is shared by their audience. The subtleties of a title can enrich a reader's or a viewer's understanding of a work.

*Rogers v. Grimaldi,* 875 F.2d 994, 998 (2d Cir.1989). Furthermore, no publicity claim exists when a celebrity's name is used in advertisements for a work protected by the First Amendment. *See, e.g., Guglielmi v. Spelling–Goldberg Prods.,* 25 Cal.3d 860, 873, 160 Cal.Rptr. 352, 603 P.2d 454, 462 (1979) (Bird, C.J., concurring) ("Since the use of Valentino's name and likeness in the film was not an actionable infringement of Valentino's right of publicity, the use of his identity in advertisements for the film is similarly not actionable.").

■■■ The right of publicity is therefore inapplicable under the First Amendment if the content of an expressive work bears *any* relationship to the use of a celebrity's name. *Rogers,* 875 F.2d at 1004 (right of publicity unavailable unless use of celebrity's name is "wholly unrelated" to the work). In addition, the right of publicity does not bar the use of a celebrity's name in a title as long as the item is a literary work and not " 'simply a disguised commercial advertisement for the sale of goods or services.' " *Id.* (quoting *Frosch v. Grosset & Dunlap, Inc.,* 75 A.D.2d 768, 769, 427 N.Y.S.2d 828, 829 (1980)).

■ In this case, plaintiff repeatedly contends that defendants' "Rosa Parks" song is not expressly "about" her or her civil rights efforts, concluding that the song's title is "unrelated" to its content and must thus have been selected "solely to attract attention." The court finds plaintiff's argument unpersuasive and unsupportable. There can be no reasonable dispute that Rosa Parks is universally known for and commonly associated with her refusal in late 1955 to obey the segregation laws in Montgomery, Alabama and "move to the back of the bus." The song at issue makes unmistakable reference to that symbolic act a total of ten times. Admittedly, the song is not about plaintiff in a strictly biographical sense, but it need not be. Rather, defendants' use of plaintiff's name, along with the phrase "move to the back of the bus," is metaphorical and symbolic. As a matter of law, this obvious relationship between the content of the song and its title bearing plaintiff's name renders the right of publicity inapplicable.

Moreover, that plaintiff (and even the court) may find defendants' music "profane and vulgar" and not regard it as artistically serious is of no consequence:

> It is fundamental that courts may not muffle expression by passing judgment

on t-shirts); *Uhlaender v. Henricksen,* 316 F.Supp. 1277 (D.Minn.1970) (involved use of major league baseball players' names in connection with a board game); *Palmer v. Schon-* *horn Enter., Inc.,* 96 N.J.Super. 72, 232 A.2d 458 (1967) (involved use of a golf player's name and likeness in connection with a golf game).

on its skill or clumsiness, its sensitivity or coarseness; nor on whether it pains or pleases. It is enough that the work is a form of expression "deserving of substantial freedom both as entertainment and as a form of social and literary criticism."

*University of Notre Dame Du Lac v. Twentieth Century–Fox Film Corp.*, 22 A.D.2d 452, 458, 256 N.Y.S.2d 301, 307, *aff'd*, 15 N.Y.2d 940, 259 N.Y.S.2d 832, 207 N.E.2d 508 (1965). Given that the court may not "pass on literary categories, or literary judgment," defendants' song enjoys First Amendment protection as long as it is a "[musical] work and not simply a disguised commercial advertisement for the sale of goods or services." *Frosch*, 75 A.D.2d at 769, 427 N.Y.S.2d at 829 (holding that right of publicity did not apply to book entitled "Marilyn" and rejecting alleged distinction between a "biography" about Marilyn Monroe and "fiction"). Because the necessary linkage between title and content is easily satisfied here, plaintiff would be hard-pressed to demonstrate that defendants' use of her name as the title to their song is "simply a disguised commercial advertisement" to sell a product, especially considering the song has received widespread acclaim and was nominated for a Grammy Award. This result is not altered by defendants' promotion of their album and hit single because the fundamental right to free expression would be illusory if defendants were permitted to entitle their song "Rosa Parks," but not advertise it to the public. The law imposes no such artificial limitation. *See, e.g., Groden v. Random House, Inc.*, 61 F.3d 1045, 1050–51 (2d Cir.1995) (use of author's photograph to promote critical work did not infringe right of publicity); *Guglielmi*, 25 Cal.3d at 873, 160 Cal.Rptr. 352, 603 P.2d at 462 ("It would be illogical to allow respondents to exhibit the film but effectively preclude any advance discussion or promotion of their lawful enterprise."); *Namath v. Sports Illustrated*, 48 A.D.2d 487, 488, 371 N.Y.S.2d 10, 11 (1975), *aff'd*, 39 N.Y.2d 897, 386 N.Y.S.2d 397, 352 N.E.2d 584 (1976) ("The use of plaintiff's photograph was merely incidental advertising of defendants' magazine in which plaintiff had earlier been properly and fairly depicted.").

Plaintiff also contends that because her name was not used in the news, to educate, for scholarly purposes or as a parody, defendants' use is not protected by the First Amendment. However, the Supreme Court has expressly rejected such a notion and held that entertainment is entitled to the same constitutional protection as the exposition of ideas: "The line between the informing and the entertaining is too elusive for the protection of the basic right." *Winters v. New York*, 333 U.S. 507, 510, 68 S.Ct. 665, 92 L.Ed. 840 (1948). Next, plaintiff incorrectly argues that First Amendment concerns are not implicated here because defendants' use of plaintiff's name was unnecessary and done only to sell their album.

> If this analysis were used to determine whether an expression is entitled to constitutional protection, grave harm would result. Courts would be required not merely to determine whether there is some minimal relationship between the expression and the celebrity, but to compel the author to justify the use of the celebrity's identity. Only upon satisfying a court of the necessity of weaving the celebrity's identity into a particular publication would the shadow of liability and censorship fade. Such a course would inevitably chill the exercise of free speech limiting not only the manner and form of expression but the interchange of ideas as well.

*Guglielmi*, 25 Cal.3d at 869, 160 Cal.Rptr. 352, 603 P.2d at 460 (citation omitted).

In her final attempt to convince the court that the First Amendment does not shield defendants from liability on her publicity claim, plaintiff states: "If Defendants [sic] position is carried forward, then the Ku Klux Klan, skinheads or any race supremacist group can exploit the names of others." Indeed, the possibly offensive use by such groups of a celebrity's name is

*exactly* the type of speech protected by the First Amendment, which would be a poor refuge for free expression if public figures could censor the use of their names whenever they found the speech to be distasteful. To the contrary, the First Amendment empowers *the audience* to regulate expressive speech. "[P]rominence invites creative comment. Surely, the range of free expression would be meaningfully reduced if prominent persons in the present and recent past were forbidden topics for the imaginations of authors." *Guglielmi,* 25 Cal.3d at 869, 160 Cal.Rptr. 352, 603 P.2d at 460. Thus, plaintiff's argument that this is "simply a property case" is offensive to the First Amendment. Accordingly, because the title "Rosa Parks" is not "wholly unrelated" to defendants' song, and because the title is the name of an expressive work and not a disguised commercial for a product, the right of publicity does not apply to the undisputed facts of this case, which necessitates dismissal of Count I in plaintiff's complaint.

### B. *Lanham Act and State Law Unfair Competition Claims (Counts II and V)*

Plaintiff also raises a claim under the Lanham Act, 15 U.S.C. § 1125 (Count II), and a related state law unfair competition claim (Count V). Section 1125(a)(1)(A) provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Like the right of publicity, the Lanham Act ordinarily applies to commercial transactions involving ordinary goods and services, not expressive works in which First Amendment concerns are paramount. Thus, even if the legitimate goals of the Lanham Act and state unfair competition laws in preventing consumer confusion are implicated by the undisputed facts of this case, they are outweighed as a matter of law by defendants' right to freedom of expression.

The court is well aware that "[p]oetic license is not without limits." *Rogers v. Grimaldi,* 875 F.2d 994, 997 (2d Cir.1989). Nonetheless,

> in general the [Lanham] Act should be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression. In the context of allegedly misleading titles using a celebrity's name, that balance will normally not support application of the Act unless the title has *no artistic relevance to the underlying work whatsoever,* or, if it has some artistic relevance, unless the title *explicitly* misleads as to the source or the content of the work.

*Id.* at 999 (emphasis added).

As discussed above, the direct artistic relevance between the title "Rosa Parks" and the content of defendants' song is so obvious that the matter is not open to reasonable debate. Furthermore, it is abundantly clear that the title does not "explicitly" mislead as to source or content. Examples of blatantly misleading titles might include: "Nimmer on Copyright," "Jane Fonda's Workout Book," a title "explicitly signifying endorsement, such as the phrase in a subtitle 'an authorized biography,'" or "The True Life Story of Ginger and Fred." *Id.* at 999–1000. Where such overt references are used in a title and are false as applied to the underlying work, the consumer's interest in avoiding deception might warrant application of the Lanham Act.

Many titles, however, include a well-known name without any overt indication of authorship or endorsement—for example, the hit song "Bette Davis Eyes" and the recent film "Come Back to the Five and Dime, Jimmy Dean, Jimmy Dean." To some people, these titles might implicitly suggest that the named celebrity had endorsed the work or had a role in producing it. Even if that suggestion is false, the title is artistically relevant to the work. In these circumstances, *the slight risk that such use of a celebrity's name might implicitly suggest endorsement or sponsorship to some people is outweighed by the danger of restricting artistic expression, and the Lanham Act is not applicable.*

Similarly, ... many titles with a celebrity's name make no explicit statement that the work is about that person in any direct sense; the relevance of the title may be oblique and may become clear only after viewing or reading the work. As to such titles, *the consumer interest in avoiding deception is too slight to warrant application of the Lanham Act.* Though consumers frequently look to the title of a work to determine what it is about, they do not regard titles of artistic works in the same way as the names of ordinary commercial products.... [M]ost consumers are well aware that they cannot judge a book solely by its title any more than by its cover.

*Id.* (emphasis added) (citations omitted).

By entitling their song "Rosa Parks," defendants made no explicit representation that their work was endorsed by or affiliated with plaintiff.[4] Nevertheless, plaintiff contends that defendants' use of her name on the cover of their album creates a grave likelihood of confusion because she recently licensed the use of her name in connection with an album of gospel recordings entitled "Verity Records Presents: A Tribute to Mrs. Rosa Parks." To support her claim of likelihood of confusion, plaintiff submitted approximately 20 affidavits from consumers who were allegedly confused as to the source or content of defendants' album. However, plaintiff's anecdotal evidence, assuming its validity, indicates at most that some members of the public might draw the incorrect inference that plaintiff had some involvement with defendants' album. "But that risk of misunderstanding, *not engendered by any overt claim in the title*, is so outweighed by the interests in artistic expression as to preclude application of the Lanham Act." *Id.* at 1001; *see also DeClemente v. Columbia Pictures Indus., Inc.*, 860 F.Supp. 30, 52 (E.D.N.Y.1994) ("[E]ven if the plaintiff's allegations of secondary meaning and consumer confusion are true, the defendants' first amendment interest in naming their films outweighs the plaintiff's and even the public's interest in preventing consumer confusion.").[5]

Moreover, defendants' album and its packaging unequivocally identify defendants as the source of the album. "The most common and effective means of apprising intending purchasers of the source of goods is a prominent disclosure on the container, package, wrapper, or label of the manufacturer's or trader's name ... [and when] that is done, there is no basis

---

4. By contrast, in *Cher v. Forum International, Ltd.*, 692 F.2d 634 (9th Cir.1982), *cert. denied*, 462 U.S. 1120, 103 S.Ct. 3089, 77 L.Ed.2d 1350 (1983), relied upon by plaintiff, the defendant explicitly misrepresented that Cher had granted an "exclusive" interview and endorsed the magazine. Similarly, in *National Bank of Commerce v. Shaklee Corp.*, 503 F.Supp. 533 (W.D.Tex.1980), the plaintiff's name was used without permission in an explicit "endorsement" of products, and in *Fairfield v. American Photocopy Equipment Co.*, 138 Cal.App.2d 82, 291 P.2d 194 (1955), the defendant explicitly misrepresented that the plaintiff was a "satisfied user" of defendant's products.

5. Furthermore, in conventional "product" trademark cases, "merely occasional" instances of alleged actual confusion do not support the existence of likelihood of confusion. *See, e.g., S.C. Johnson & Son, Inc. v. Johnson*, 266 F.2d 129, 141 (6th Cir.), *cert. denied*, 361 U.S. 820, 80 S.Ct. 65, 4 L.Ed.2d 65 (1959).

784

for a charge of unfair competition." *Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189, 203 (3d Cir.), *cert. denied*, 516 U.S. 808, 116 S.Ct. 54, 133 L.Ed.2d 19 (1995). In other words, "the plaintiff's right can be protected sufficiently by requiring the defendant's [products] to be clearly marked so as to indicate unmistakably that they are defendant's and not the plaintiff's goods." *Flagg Mfg. Co. v. Holway*, 178 Mass. 83, 91, 59 N.E. 667, 667 (1901). Given the prominent appearance of defendant Outkast's name on their album, there can be no likelihood of confusion under the Lanham Act between plaintiff's and defendants' albums as a matter of law.[6]

■ Likewise, plaintiff's state law unfair competition claim also fails.[7] As a threshold matter, plaintiff cannot proceed under M.C.L. § 429.42 [8] because application of that statute contemplates a state registered trademark, which plaintiff does not have. Furthermore, plaintiff has not established that she has any common law trademark rights in her name, or that defendants made any trademark use of her name.[9] In fact, plaintiff conceded during oral argument that she cannot maintain an action for trademark infringement. Finally, plaintiff cites the following from the *Restatement (Third) of Unfair Competition* §§ 46–47 (1995):

> One who appropriates the commercial value of a person's identity by using without consent the person's name, likeness, or other indicia of identity for purposes of trade is subject to liability.... The name, likeness, and other indicia of a person's identity are used "for purposes of trade" ... if they are used in advertising the user's goods or services, or are placed on merchandise marketed

6. Compare the Lanham Act cases cited by plaintiff all of which involved the use of famous persons' names in connection with recordings by them, thereby directly and intentionally misrepresenting that the plaintiffs had approved the unauthorized distributions of their work. *See PPX Enter., Inc. v. Audiofidelity Enter., Inc.*, 818 F.2d 266, 268 (2d Cir. 1987) (defendants marketed eight albums allegedly containing feature performances by the electric guitarist Jimi Hendrix, when in fact the albums "either did not contain Hendrix performances at all or contained performances in which Hendrix was merely a background performer or undifferentiated session player"); *Apple Corps Ltd. v. Adirondack Group*, 124 Misc.2d 351, 355, 476 N.Y.S.2d 716, 719 (1983) (defendants distributed "recordings of inferior quality which were made as a lark"); *Benson v. Paul Winley Record Sales Corp.*, 452 F.Supp. 516, 518 (S.D.N.Y. 1978) (defendants "made [the plaintiff] to appear as the central and controlling artist when in fact he was not," and also misrepresented to the public that the songs on the album were recent releases by the plaintiff). On the other hand, defendants here have not used plaintiff's name on a work by plaintiff, nor have defendants misappropriated any written or recorded material of plaintiff's.

7. The Sixth Circuit noted in *Carson v. Here's Johnny Portable Toilets, Inc.*, that Lanham Act and Michigan state law unfair competition claims were both governed by the same standards. 698 F.2d at 833; *see also Sports Auth.,*

*Inc. v. Abercrombie & Fitch, Inc.*, 965 F.Supp. 925, 934 n. 5 (E.D.Mich.1997) ("the Court's analysis under the Lanham Act will also apply to [plaintiff's Michigan] common law claim").

8. M.C.L. § 429.42 states in relevant part:

 [A]ny person who shall:
 (a) Use, without the consent of the registrant, any reproduction, counterfeit, copy or colorable imitation *of a mark registered under this act* in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services ... is liable to a civil action *by the owner of the registered mark.*
 (emphasis added).

9. "[W]hether alleging infringement of a registered trademark ... or infringement of an unregistered trademark ..., it is clear that a plaintiff must show that it has actually used the designation at issue as a trademark, and that the defendant has also used the same or a similar designation as a trademark." *Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998). Compare defendants' use of plaintiff's name here for the purpose of sending an artistic message, with a hypothetical claim by defendants that they were selling "Rosa Parks"-brand discs and cassettes.

by the user, or are used in connection with services rendered by the user.

Plaintiff's purported reliance on the Restatement lacks credit, however, considering she neglected to mention the portion that unambiguously distinguishes it from this case: "However, uses 'for purposes of trade' does not ordinarily include the use of a person's identity in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising that is incidental to such uses." *Id.* § 47. As a public figure, plaintiff simply is not entitled to control every conceivable presentation of her name and likeness. Consequently, defendants are entitled to summary judgment as to plaintiff's unfair competition and Lanham Act claims.

### C. *Defamation Claim (Count III)*

 Next, plaintiff asserts a claim for defamation in Count III of her complaint. Specifically, plaintiff alleges that defendants "used derogatory and offensive language in their lyrics and associated said language with Plaintiff's 'persona,' character and name without her consent," thereby "cast[ing] Plaintiff in a false and unacceptable light." The requisite elements of a defamation claim in Michigan include: (1) a false and defamatory statement to a third party; (2) an unprivileged statement; (3) fault amounting to at least negligence; and, (4) either actionability of statements irrespective of special harm, or existence of special harm caused by the publication. *Andrews v. Prudential Sec., Inc.,* 160 F.3d 304, 308 (6th Cir.1998); *Rouch v. Enquirer & News,* 427 Mich. 157, 173–74, 398 N.W.2d 245, 252 (1986). In addition, the Constitutional guarantee of free expression limits the scope of state defamation laws. *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *see also Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 14, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). The First Amendment prohibits public figures from recovering damages

for a false and defamatory statement unless the statement was made with actual malice. *Sullivan,* 376 U.S. at 279–80, 84 S.Ct. 710. To meet the actual malice standard, plaintiff must show by clear and convincing evidence that a false statement was made with knowledge of the falsity or with reckless disregard for the truth. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Sullivan,* 376 U.S. at 280, 84 S.Ct. 710.

In order to safeguard freedom of expression and prevent the chilling effect imposed upon it by extensive litigation, this court shall conduct an independent review of all allegedly defamatory statements to determine, as a matter of law, whether the material is actionable. *Garvelink v. Detroit News,* 206 Mich.App. 604, 609, 522 N.W.2d 883, 886 (1994), *appeal denied,* 448 Mich. 948, 534 N.W.2d 530 (1995) ("We are required to conduct an independent review of [the allegedly defamatory matter] to ensure against the forbidden intrusion on the field of free expression and to examine the statements and the circumstances under which they were made."). A statement is actionable if it is "provable as false," and understandable as stating actual facts about the complainant. *Milkovich,* 497 U.S. at 16–17, 19–20, 110 S.Ct. 2695; *see also Greenbelt Coop. Publ'g Ass'n v. Bresler,* 398 U.S. 6, 13–14, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970) (recognizing that some statements, read in context, are not capable of defamatory interpretation).

 A careful review of defendants' entire "Rosa Parks" song reveals that it manifestly contains no factual statements, false or otherwise, about plaintiff. In fact, no reasonable person could interpret any of the lyrics as stating actual facts about plaintiff. Rather, the song only references plaintiff indirectly through the refrain "Ah ha, hush that fuss, Everybody move to the back of the bus." [10] Furthermore, because

---

10. To the extent that the chorus could somehow be conceived as a direct reference to plaintiff, it constitutes an accurate historical reference to her refusal in 1955 to give up her seat and move to the back of bus, and truth serves as an absolute defense to defamation claims. *See Porter v. Royal Oak,* 214 Mich. App. 478, 486, 542 N.W.2d 905, 909 (1995).

no portion of defendants' song can be construed as a false factual statement about plaintiff, she, as a public figure, could never prove actual malice. Thus, her defamation claim necessarily fails.

Plaintiff's alternative reliance on the closely-related theory of false light invasion of privacy is likewise of no avail. To state a false light claim, plaintiff must demonstrate that defendants "broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position." *Porter v. Royal Oak*, 214 Mich.App. 478, 486–87, 542 N.W.2d 905, 909 (1995), *appeal denied*, 453 Mich. 977, 557 N.W.2d 315 (1996) (quoting *Duran v. Detroit News, Inc.*, 200 Mich. App. 622, 631–32, 504 N.W.2d 715, 720–21 (1993), *appeal denied*, 444 Mich. 944, 512 N.W.2d 846 (1994)). However, just as with defamation claims, "[if] a statement cannot be reasonably interpreted as stating actual facts about the plaintiff, it is protected by the First Amendment," and thus not actionable for false light invasion of privacy. *Ireland v. Edwards*, 230 Mich.App. 607, 614, 584 N.W.2d 632, 636 (1998). Additionally, "this cause of action cannot succeed if the contested statements are true." *Porter*, 214 Mich.App. at 487, 542 N.W.2d at 909. "Indeed, any other conclusion would allow a plaintiff to circumvent the First Amendment limitations, and would effectively eliminate the 'breathing space' required for freedom of expression." *Ireland*, 230 Mich.App. at 625 n. 15, 584 N.W.2d at 641 n. 15.

Because the court has already determined that plaintiff cannot overcome the First Amendment limitations regarding defendants' "Rosa Parks" song, she is unable to establish that defendants portrayed her in a false light. Actually, it is beyond comprehension how defendants' song could attribute to plaintiff any false characteristics or beliefs when the song plainly does not portray her at all. Accordingly, plaintiff's objection to the use of her name in conjunction with an artistic work containing allegedly "profane" language must give way to defendants' First Amendment right to comment on public figures, regardless of whether the commentary meets with agreement or approval.

Similarly, plaintiff's resort to the rarely-successful cause of action for defamation by implication is also without merit. While true that "Michigan common law recognizes defamation by implication, ... '[a] plaintiff alleging [such a claim] must still prove material falsity.'" *Hawkins v. Mercy Health Serv., Inc.*, 230 Mich.App. 315, 329, 583 N.W.2d 725, 731–32, *appeal dismissed*, 589 N.W.2d 773 (Mich.1998) (quoting *Locricchio v. Evening News Ass'n*, 438 Mich. 84, 130, 476 N.W.2d 112, 132 (1991), *cert. denied*, 503 U.S. 907, 112 S.Ct. 1267, 130 L.Ed.2d 907 (1992)). Again, plaintiff cannot demonstrate the existence of any false implications flowing from defendants' song because to the extent the song implicates her, it accurately references admitted conduct by her. Moreover, the fact that defendants titled their song "Rosa Parks" does not, as plaintiff contends, signify her endorsement of the "offensive" language contained therein. Instead, defendants' use of plaintiff's name connotes their engagement in the fundamental right to free expression. "[I]n defamation cases, the concern is with defamatory lies masquerading as truth." *Guglielmi v. Spelling–Goldberg Prods.*, 25 Cal.3d 860, 871, 160 Cal.Rptr. 352, 603 P.2d 454, 461 (1979) (Bird, C.J., concurring). By contrast, the musician who creates an expressive work with a symbolic title proclaims his artistic license and indifference to "the facts." "There is no pretense." *Id.* For all of these reasons, summary judgment in defendants' favor is appropriate as to Count III.

### D. Intentional Infliction of Emotional Distress Claim (Count IV)

Count IV states a claim for intentional infliction of emotional distress. To

prevail on such a claim, plaintiff must prove: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and, (4) severe emotional distress. *Andrews v. Prudential Sec., Inc.,* 160 F.3d 304, 309 (6th Cir.1998). "Extreme and outrageous conduct" is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Id.* (quoting *Roberts v. Auto–Owners Ins. Co.,* 422 Mich. 594, 602–03, 374 N.W.2d 905, 908–09 (1985)). Furthermore, liability arises only where " 'the distress inflicted is so severe that no reasonable man could be expected to endure it.' " *Id.*

"The trial court must determine as a matter of law whether the defendant's conduct was so extreme and outrageous to withstand a motion for summary disposition." *Duran v. Detroit News, Inc.,* 200 Mich.App. 622, 630, 504 N.W.2d 715, 720 (1993), *appeal denied,* 444 Mich. 944, 512 N.W.2d 846 (1994) (affirming dismissal of intentional infliction of emotional distress claim). In this case, defendants' exercise of their First Amendment right to title a song "Rosa Parks" can hardly be considered extreme and outrageous. *Cf. Hustler Magazine v. Falwell,* 485 U.S. 46, 50, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988) (Court denied Jerry Falwell's claim of intentional infliction of emotional distress over a parody depicting him engaged in incest and alcohol abuse, holding that a state's interest in preventing emotional distress to public figures is not "sufficient to deny First Amendment protection to speech that is patently offensive and is intended to inflict emotion injury . . . when that speech could not reasonably have been interpreted as stating actual facts about the public figure involved"). Count IV must therefore be dismissed as a matter of law.

E. *Intentional Interference with Business Relations Claim (Count VI)*

Plaintiff also asserts a claim for intentional interference with an advantageous business relationship, contending that defendants' "unauthorized use of her name in the present context will substantially interfere with sale and distribution of the authorized [tribute gospel] recording."

The basic elements of tortious interference with a business relationship are the existence of a valid business relation or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship has been disrupted.

*Lakeshore Community Hosp., Inc. v. Perry,* 212 Mich.App. 396, 401, 538 N.W.2d 24, 27 (1995). Plaintiff must further show the "intentional doing of a per se wrongful act or the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiff's contractual rights or business relationship." *Chrysler Int'l Corp. v. Cherokee Export Co.,* 134 F.3d 738, 745 (6th Cir.1998). " 'Malice' in the legal sense is the intentional doing of a wrongful act without justification or excuse. And a 'wrongful' act is any act which in the ordinary course will infringe upon the rights of another to his damage, except it be done in the exercise of an equal or superior right." *Id.*

In the present matter, plaintiff does not allege that defendants caused the breach of any contract to which she is a party. Instead, plaintiff rests her claim entirely on *Stormor v. Johnson,* 587 F.Supp. 275 (W.D.Mich.1984), holding that a cause of action for tortious interference might be stated by allegations that a defendant caused the performance of a third party under contract to be more expensive or burdensome. *Id.* at 282. However, as acknowledged in *Stormor,* "no Michigan court has specifically recognized [such] a cause of action," *id.,* nor has any Michigan court done so in the intervening 15 years. Furthermore, the *Stormor* court did not determine that the plaintiff should prevail on its theory; rather, the court merely

declined to dismiss that aspect of the complaint on the defendant's motion. *Id.*

Even if this court were to follow *Stormor*, instead of using the test universally applied by Michigan courts that requires plaintiffs to demonstrate an actual contractual breach by a third party, plaintiff's tortious interference claim still fails. First, plaintiff has no evidence to support her conclusory allegation that the continued sales of defendants' song "would make it more disruptive, expensive and burdensome for the sale of the tribute gospel album to flourish in the marketplace." In addition, plaintiff's declaration that "all future endeavors ... to market her name in connection with worthwhile projects are in jeopardy" is equally undocumented. Moreover, Michigan law requires the existence of a *present* contract to succeed on a tortious interference claim. *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich. App. 300, 312–13, 486 N.W.2d 351, 358 (1992), *appeal denied sub nom. Admiral Ins. Co. v. Brochert*, 442 Mich. 917, 503 N.W.2d 449 (1993). Plaintiff's supposition that she will be unable to enter into prospective contracts thus precludes the relief sought. More importantly, however, defendants clearly have not engaged in any per se wrongful conduct by permissibly titling their song "Rosa Parks." Nor have defendants committed any lawful act with malice that is unjustified in law. Accordingly, defendants are entitled to summary judgment as to Count VI.

### F. Remaining State Law Claims (Counts VII–IX)

Plaintiff's remaining claims include: unjust enrichment (Count VII); negligence (Count VIII); and, conspiracy (Count IX). Because all three claims incorrectly presuppose a legal duty not to use plaintiff's name as defendants did, they too must be dismissed.

 To pursue an action for unjust enrichment in Michigan, plaintiff must show (1) the receipt of a benefit by defendants from plaintiff; and, (2) that it is inequitable for defendants to retain such benefit. *Rothschild v. Ford Motor Co.*, 2 F.Supp.2d 941, 951–52 (E.D.Mich.1998) (citing *B & M Die Co. v. Ford Motor Co.*, 167 Mich.App. 176, 181, 421 N.W.2d 620, 622 (1988)). Even assuming arguendo that some financial benefit received by defendants from their *Aquemini* album can be attributed to the use of plaintiff's name as the title to one of 15 songs included therein, defendants had a clear First Amendment right to title their song "Rosa Parks." Consequently, it is not inequitable for defendants to retain any such "benefit" resulting from the *Aquemini* album, and they have not been unjustly enriched.

 Next, in order to maintain a negligence claim, plaintiff must prove that (1) defendants owed her a legal duty; (2) defendants breached that duty; (3) plaintiff suffered damages; and, (4) the breach was the proximate cause of the damages suffered. *Pitsch v. ESE Mich., Inc.*, 233 Mich.App. 578, 593 N.W.2d 565, 575, *appeal denied*, 595 N.W.2d 844 (Mich.1999). Plaintiff, however, has failed to establish that defendants owed her any legal duty, considering no contractual or other relationship ever existed between the parties.

 Finally, under Michigan law, " 'the gist or gravamen of [a civil conspiracy] action is not the conspiracy but is the wrongful acts causing the damages. The conspiracy standing alone without the commission of acts causing damage would not be actionable.' " *Glidden Co. v. Jandernoa*, 5 F.Supp.2d 541, 555 (W.D.Mich.1998) (quoting *Roche v. Blair*, 305 Mich. 608, 614, 9 N.W.2d 861, 863 (1943)). Because defendants have not engaged in any wrongful acts, no actionable conspiracy exists.

### IV. CONCLUSION

The undisputed facts in this case require that summary judgment be granted in defendants' favor. Therefore,

IT IS ORDERED that plaintiff's motion for summary judgment and injunctive relief hereby is DENIED.

IT IS FURTHER ORDERED that defendants' motion for summary judgment hereby is GRANTED.