ETW CORP., Plaintiff,

v.

JIREH PUBLISHING, INC., Defendant.

No. 1:98 CV 1485.

United States District Court,
N.D. Ohio,
Eastern Division.

April 10, 2000.

Timothy P. Fraelich, Jones, Day, Reavis & Pogue, Cleveland, OH, for plaintiff.

Dennis J. Niermann, Nierman & Company, Cleveland, OH, for defendant.

### Memorandum of Opinion and Order

GAUGHAN, District Judge.

### Introduction

This matter is before the Court upon defendant's Motion for Summary Judgment Based upon Freedom of Speech and Expression (Doc. 27), defendant's First Partial Motion for Summary Judgment Regarding Lack of Customer Confusion (Doc. 28), plaintiff's Cross Motion for Summary Judgment Based upon Freedom of Speech and Expression (Doc. 56) and plaintiff's Cross Motion for Summary

Judgment Based upon Issue of Likelihood of Confusion (Doc. 57). This is a trademark infringement case arising out of defendant's creation of a print featuring the image of Tiger Woods. For the following reasons, defendant's Motion for Summary Judgment Based upon Freedom of Speech and Expression is granted as to the right to publicity claim and moot as to the other claims, defendant's First Partial Motion for Summary Judgment Regarding Lack of Customer Confusion is granted, plaintiff's Cross Motion for Summary Judgment Based upon Freedom of Speech and Expression is moot and plaintiff's Cross Motion for Summary Judgment Based upon Issue of Likelihood of Confusion is denied.

### *Facts*

Plaintiff, ETW Corp. (hereafter, ETW), sued Jireh Publishing, Inc. (hereafter, Jireh) in this trademark infringement lawsuit arising out of the sale of a print allegedly using the name, image or likeness of Tiger Woods.

The parties agree on the notoriety of Eldrick "Tiger" Woods. Woods is one of the world's most well-known professional golfers, being the youngest-ever to win the U.S. Junior Amateur Championship and the only player to win this title three times. He also became the youngest-ever winner of the U.S. Amateur Championship and the first player to win this title in three consecutive years. In the years 1991 through 1994 several golf magazines named Tiger Woods to such distinctions as "player of the year." Tiger Woods became a full-time professional golfer in 1996, winning two Professional Golf Association (PGA) tour events that year and was named "Sportsman of the Year" by *Sports Illustrated* magazine. In 1997, Tiger Woods won the Masters Tournament, becoming the youngest player to do so. That year he won six PGA Tour events, was named PGA Tour Player of the Year and became the first champion of a major PGA Tour event of either African or Asian heritage. (Am.Compl.¶¶ 7–13).

ETW is the exclusive licensing agent of Tiger Woods. ETW has filed numerous trademark applications with the United States Patent and Trademark Office for the mark "Tiger Woods" and in 1998 received registration for the trademark "TIGER WOODS," "for: art prints, calendars, mounted photographs, notebooks, pencils, pens, posters, trading cards, and unmounted photographs, in Class 16." (*Id.* at ¶ 6, 16, Ex. 1).

Jireh is an Alabama publishing company and the exclusive publisher of the artwork of Rick Rush, a "sports artist." Rush has created an art print entitled, "The Masters of Augusta." A narrative insert accompanying this print characterizes it as featuring Tiger Woods in the center "displaying that awesome swing" and "flanked by his caddie ... and final round player partner's caddie ..." The bottom of the print contains the language, "The Masters of Augusta," "Rick Rush," "Painting America through Sports." Rick Rush's signature appears in the bottom right hand corner of the print. In another insert, Jireh certifies that this is a "limited edition" print. The outside of the white envelope containing the print has in large letters, "Rick Rush—Painting America Through Sports" and a very large duplication of Mr. Rush's signature. Under the back flap of the envelope are the words in smaller print, "Masters of Augusta, Tiger Woods." (Ex. submitted to Court).

ETW's First Amended Complaint asserts six claims. Count One alleges trademark infringement under the Lanham Act, 15 U.S.C. § 1114. Count Two alleges dilution under the Lanham Act, 15 U.S.C. § 1125(c). Count Three alleges unfair competition and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a). Count Four alleges unfair competition and deceptive trade practices in violation of the Ohio Revised Code. Count Five alleges unfair competition and trademark infringement under Ohio common law. Count Six alleges violation of Tiger

Woods' right of publicity in violation of Ohio common law.

This matter is before the Court upon cross-motions for summary judgment.

### Standard of Review

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir.1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir.1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir.1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citation omitted).

### Discussion

A trademark is a designation, "any word, name, symbol, or device ... used by a person ... to identify and distinguish his or her goods ... from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. "[I]n order to be protected as a valid trademark, a designation must create 'a separate and distinct commercial impression, which ... performs the trademark function of identifying the source of the merchandise to the customers.'" *The Rock and Roll Hall of Fame and Museum v. Gentile Productions*, 134 F.3d 749 (6th Cir.1998), citing *In re Chemical Dynamics, Inc.*, 839 F.2d 1569, 1571 (Fed.Cir.1988).

■ "[W]hether alleging infringement of a registered trademark, pursuant to 15 U.S.C. § 1114(1), or infringement of an

unregistered trademark, pursuant to 15 U.S.C. § 1125(a)(1), it is clear that a plaintiff must show that it has actually used the designation at issue as a trademark, and that the defendant has also used the same or a similar designation as a trademark." *Rock and Roll,* 134 F.3d at 753 (citations omitted). The Sixth Circuit has recently stated that "to prevail on a motion for summary judgment in its Lanham Act trademark infringement claim, [plaintiff] must prove that the purportedly infringing mark is 'likely to cause confusion' in prospective purchasers' minds." *Marketing Displays, Inc. v. Traffix Devices, Inc.,* 200 F.3d 929, 933 (6th Cir.1999). That is, "whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.,* 109 F.3d 275, 280 (6th Cir.1997).[1] Eight factors have been identified by the Sixth Circuit in analyzing whether there is a likelihood of confusion:

1. the strength of the plaintiff's mark;
2. the relatedness of the services;
3. the similarity of the marks;
4. the evidence of actual confusion;
5. the marketing channels used;
6. the likely degree of purchaser care;
7. the defendant's intent in selecting the mark; and
8. the likelihood of expansion of the product lines.

*Marketing Displays,* 200 F.3d at 933.

■ For the following reasons, this Court finds that plaintiff has failed to establish the validity of its claim to trademark rights in the image of Tiger Woods and, therefore, its infringement claims fail. Consequently, it is unnecessary to address the eight factors stated above in that there is no evidence that plaintiff actually used the allegedly infringing image of Tiger Woods as a trademark.

As in *Rock and Roll, supra,* plaintiff has not shown that it uses the image of Tiger Woods depicted in defendant's print as a trademark. In *Rock and Roll,* the plaintiff had a trademark in the Museum's building design. Defendant created a poster featuring a photograph of the Museum's building. In reviewing the district court's granting of preliminary injunction to the plaintiff, the court of appeals stated that it was not convinced that the plaintiff used the building design as a trademark and so had "grave doubts" as to plaintiff's likelihood of success on its trademark infringement claim. Specifically, the court reviewed the plaintiff's "disparate uses of several different perspectives of its building design" on various goods and stated that it could not "conclude that they create a consistent and distinct commercial impression as an indicator of a single source of origin or sponsorship." *Rock and Roll,* 134 F.3d at 755. The court stated that consumer recognition of the various depictions of the Museum's building design as depictions of the Museum "is not the equivalent of the recognition that these various drawings or photographs indicate a single source of the goods on which they appear. Consistent and repetitive use of a designation as an indicator of source is the hallmark of a trademark." *Id.*

The case before this Court is similar. Plaintiff asserts that the print at issue infringes its trademark in TIGER WOODS. The print, as plaintiff points out, contains three separate depictions of Tiger Woods. The words "Tiger Woods" do not appear on the print but do appear in a narrative description accompanying the print. While plaintiff repeatedly points to the strong public recognition of Tiger Woods, plaintiff has not demonstrated that it uses the image of Tiger Woods, which is used in defendant's print, as a trademark, i.e., an identification of source. Plaintiff asserts that the mark is used as a

---

1. [T]rademark claims under Ohio law follow the same analysis. *Daddy's Junky Music*  *Stores, supra.*

trademark in connection with poster product and, therefore, the mark at issue is used by plaintiff *as a trademark.* Plaintiff submits the affidavit of John Oney which incorporates duplicates of six posters sold by Nike, Inc., a licensee of ETW. (Doc. 72 Ex. A). However, if anything, the posters show that plaintiff does not use a consistent image of Tiger Woods as a trademark because each of the posters is a different depiction of Tiger Woods. (*Id.*)

Rather, although not discussed by either party, the Court finds *Pirone v. MacMillan, Inc.,* 894 F.2d 579 (2nd Cir.1990) to be applicable.[2] The Sixth Circuit has indicated that it agrees with *Pirone.* *Rock and Roll,* 134 F.3d at 755. In *Pirone,* George Herman "Babe" Ruth's daughters had registered the words "Babe Ruth" as a trademark for "paper articles, namely, playing cards, writing paper and envelopes." Defendant published a calendar entitled, "The 1988 MacMillan Baseball Engagement Calendar" which included three photographs of Babe Ruth, one on the cover of the calendar and two accompanying two of the featured weeks. Plaintiff filed suit alleging, *inter alia,* violations of §§ 1114 and 1125(a) of the federal trademark law. The case is very similar to the one before this Court, in that, as the court noted,

[Plaintiff] argues that it owns valid, protectible trademark rights in the image and name of Babe Ruth. Although its registration is limited to the words 'Babe Ruth,' [Plaintiff] would have us read her rights in that word mark to include every photograph of Ruth ever taken. We decline to do so.

*Pirone,* 894 F.2d at 582. Similarly, in this case, although plaintiff's trademark is in the words "TIGER WOODS," "for art prints ...," plaintiff complains that defendant's poster which "contains three separate depictions of Tiger Woods" (Doc. 57 at 3, 9) infringes the trademark. The *Pirone* court went on to state,

**2.** Defendant refers to *Pirone* in its Motion regarding the First Amendment but only gen-

[Plaintiff's] position finds support in neither precedent nor common sense. Every case in which the owner of a word mark received protection against infringing use of a picture mark, or vice versa, involved a true picture mark, a single pictorial representation used repeatedly as an indication of origin.

The court reasoned that unlike picture marks which portray some symbol used repeatedly in an identical fashion, "an individual's likeness is not a consistently represented fixed image—different photographs of the same person may be markedly dissimilar." Thus, a photo of a person "is not inherently 'distinctive' in the trademark sense of tending to indicate origin." *Id.* at 583. The court recognized that while a photograph of a person may be a valid trademark, it would be a particular photograph consistently used on specific goods. The court rejected the plaintiff's assertion of rights in every photograph of Babe Ruth.

The same is true here where plaintiff seems to be asserting that it would have trademark rights in any image or depiction of Tiger Woods even though plaintiff has not shown that it has repeatedly used a single pictorial representation of Tiger Woods as an indication of origin.

■ Plaintiff also asserts that defendant's use of the words "Tiger Woods" in the narrative insert accompanying the poster amounts to infringement of the mark. However, given that plaintiff has failed to show that defendant's images of Tiger Woods are an infringing use of the trademark, defendant's use of the words is a "fair use." The federal trademark statute provides a defense to an infringement charge on the ground that the use of the term "is a use, otherwise than as a mark, ... which is descriptive of and used fairly and in good faith only to describe the goods ... of such party." 15 U.S.C. § 1115(b)(4).

.erally in providing a definition of a trademark. (Motion at 13).

For these reasons, Counts One, Two and Three which allege violations of the Lanham Act fail as well as Counts Four and Five which allege infringement under Ohio law inasmuch as trademark claims under Ohio law follow the same analysis as under federal law.

■ Count Six alleges violation of Tiger Woods' right of publicity in violation of Ohio common law. Ohio recognizes the right of publicity as a part of the state's common law. *Zacchini v. Scripps–Howard Broadcasting Co.,* 47 Ohio St.2d 224, 351 N.E.2d 454 (1976), rev'd on other grounds, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977) (A television station's broadcast televising plaintiff's entire "human cannonball" act on its news program is not privileged under the First and Fourteenth Amendments to the United States Constitution.) *Zacchini* held, "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy, and the use or benefit need not necessarily be commercial." Syllabus at par. 1. See also *Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831, 834 (6th Cir.1983) ("[T]he right of publicity protects the celebrity's pecuniary interest in the commercial exploitation of his identity.")

While the United States Supreme Court concluded that the First and Fourteenth Amendments do not immunize the media when they broadcast a performer's *entire* act without his consent, the right of publicity is limited in certain circumstances by the First Amendment. See *Parks v. LaFace Records,* 76 F.Supp.2d 775, 779 (E.D.Mich.1999), citing J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §§ 28:40–28:41 (4th ed.1999) (the "right of publicity . . . does not authorize a celebrity to prevent the use of her name in an expressive work protected by the First Amendment.") and Jerome Gil-

son, *Trademark Protection and Practice* § 2.16[2] (1999) ("The individual's right of publicity is balanced with, and limited by, the right of the public to know and that of the news media under the First Amendment freedoms of speech and of the press to disseminate information . . . Privilege from the right of publicity actions is not limited to the news media.")

Plaintiff does not specifically address this claim.[3] Defendant argues that the right of publicity has not been violated because the prints are protected by the First Amendment because they are art work and do not constitute commercial speech. Defendant asserts that the prints are paintings which express "the majesty of a newsworthy moment . . ." (Doc. 27 at 7).

Plaintiff asserts (in its arguments regarding the First Amendment defense to the trademark claims) that the prints are "merely sports merchandise" not entitled to First Amendment protection or, at best, commercial speech entitled to less protection under the First Amendment. Plaintiff asserts that "federal cases on point characterize posters as merchandise" not protected by the First Amendment. (Doc. 73 at 2). However, the Court does not find these cases dispositive.

In *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 222 (2nd Cir.1978), which was later abrogated on grounds that the right of publicity under New York law is not descendible, defendant published a poster entitled, "In Memory" using a copyrighted photograph of Elvis. Defendant argued that it had a right to publish the posters relying on an earlier district court case wherein a television comedian who had engaged in a "bogus presidential candidacy" was barred from successfully suing the publisher of a poster portraying him entitled, "For President," because the comedian had chosen the political arena for

---

**3.** All of plaintiff's First Amendment arguments relate to the trademark claims. In its briefing regarding the likelihood of confusion

issue, plaintiff mentions its right of publicity claim but only insofar as to distinguish *Rock and Roll, supra,* from the case herein.

satire which made him "newsworthy" in the First Amendment sense. The court disagreed with the publishers of the Elvis poster that their poster was in the same "newsworthy" category merely because it was entitled, "In Memory."

Herein, defendant's artistic prints seeking to convey a message may be distinguished from posters which merely reproduce an existing photograph.

In *Dallas Cowboys Cheerleaders v. Scoreboard Posters,* 600 F.2d 1184 (5th Cir.1979), the cheerleaders posed in their official outfits for a poster which was copyrighted and sold three quarters of a million copies. Former members of the Dallas cheerleaders posed for a poster mimicking the Dallas poster. Defendant published this poster featuring the partially nude "ex-Dallas Cheerleaders" wearing outfits nearly identical to those in the original poster and which intentionally parodied it. A copyright infringement case ensued wherein an injunction was upheld against defendant from distributing its poster. Defendant had argued on appeal that in weighing the preliminary injunction factors the district court "failed to heed their first amendment rights to publish their poster unfettered by prior restraint." The court of appeals disagreed stating, "The judgment of the constitution is that free expression is enriched by protecting the creations of authors from exploitation by others, and the Copyright Act is the congressional implementation of that judgment."

Aside from the fact that the claim before this Court involves the right of publicity and not copyright, this Court is not faced with an instance of mere copying of an idea but with a unique expression of an idea.

In *Parks,* 76 F.Supp.2d at 779, plaintiff challenged defendant's use of her name in a song. The court, in addressing the breadth of the First Amendment and finding music to be protected as expression, merely quoted an earlier New York district court decision that "more so than posters, bubble gum cards, or some other such 'merchandise,' books and movies are vehicles through which ideas and opinions are disseminated and, as such, have enjoyed certain constitutional protections, not generally accorded 'merchandise.' " Thus, *Parks* offered no insight into distinguishing mere posters from artwork.

Therefore, plaintiff's assertion that all posters are the equivalent of merchandise is untenable.

Nor has plaintiff convinced the Court that the prints are commercial speech which plaintiff acknowledges is defined as that which "does no more than propose a commercial transaction" or that which "merely advertises a product or service for business purpose." Plaintiff asserts that under this definition the poster is commercial speech. Plaintiff points to the Rick Rush newsletter which advertises the posters and asserts that the use of the mark Tiger Woods therein is commercial speech in that it uses the mark to propose a commercial transaction. (Doc. 73 Ex. A). However, the newsletter is not the poster which is at issue in this case.

■ Rather, the Court finds that paintings and drawings are protected by the First Amendment. The item at issue herein is a print of a painting done by Rick Rush who characterizes himself as "America's Sporting Artist–Painting America through Sports." In the packaging containing the print, Rush states, "I want to give America serious art on a subject central to American life." The narrative states generally what Rush wishes to express through this art, for example, "As man is valuable, so is what man does, and sports—perhaps more than other activities—reminds us of life's best moments and its brevity in the same instance." The item at issue is a "limited edition;" a certificate verifies that "only 5000 prints [are] available worldwide." It appears that the United States Supreme Court would find such expression to fall within the ambit of the First Amendment. See, e.g., *Hurley*

*v. Irish–American Gay, Lesbian and Bisexual Group of Boston,* 515 U.S. 557, 569, 115 S.Ct. 2338, 2345, 132 L.Ed.2d 487 (1995) (a case challenging the right to exclude some marchers from a parade wherein the court remarked that "the Constitution looks beyond written or spoken words as mediums of expression" ... and noting that examples of painting, music, and poetry are "unquestionably shielded" by the First Amendment) and *Kaplan v. California,* 413 U.S. 115, 119–120, 93 S.Ct. 2680, 2684, 37 L.Ed.2d 492 (1973) (an obscenity case wherein the court remarked that "pictures, films, paintings, drawings, and engravings ... have First Amendment protection until they collide with the long-settled position of this Court that obscenity is not protected by the Constitution."). Additionally, the Second Circuit has concluded that "[v]isual art is as wide ranging in its depiction of ideas, concepts and emotions as any book, treatise, pamphlet or other writing, and is similarly entitled to full First Amendment protection." *Bery v. City of New York,* 97 F.3d 689, 695 (2nd Cir.1996) (individual artists sought to display and sell their creations in public spaces in the City without a vendors license.). The *Bery* court found no less protection because the materials were offered for sale and stated, "paintings, photographs, prints and sculptures ... always communicate some idea or concept to those who view it, and as such are entitled to full First Amendment protection." *Id.* at 696.

So too, the print at issue herein is an artistic creation seeking to express a message. The fact that it is sold is irrelevant to the determination of whether it receives First Amendment protection.

Plaintiff contends that its case is "substantially similar" to *National Football League Prop. v. Playoff Corp.,* 808 F.Supp. 1288 (N.D.Tex.1992). In evaluating a motion for preliminary injunction in a trademark infringement action challenging defendant's plan to market football trading cards, the court rejected a defense that the newsworthiness of the information on the cards would render a preliminary injunction a prior restraint in violation of the First Amendment. The court reasoned,

> To accept [defendant's] argument would be to allow any infringer to deliver 'newsworthy' information on a T-shirt or other commercial article while at the same time displaying trademarks belonging to another and claim that preliminary injunctive relief before shipment of the merchandise constitutes prior restraint.

*Id.* at 1294. Defendant herein does not pretend to deliver newsworthy information via a T-shirt but, rather, seeks to create an art print expressing his own original message.

For these reasons, defendant's motion for summary judgment regarding the claim of right to publicity is granted.[4]

### Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment Based upon Freedom of Speech and Expression is granted as to the right to publicity claim and moot as to the other claims, defendant's First Partial Motion for Summary Judgment Regarding Lack of Customer Confusion is granted, plaintiff's Cross Motion for Summary Judgment Based upon Freedom of Speech and Expression is moot and plaintiff's Cross Motion for Summary Judgment Based upon Issue of Likelihood of Confusion is denied.

IT IS SO ORDERED.

---

**4.** In Document 27, defendant has moved for summary judgment as to all claims.